IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PENNSYLVANIA INTERNATIONAL
ACADEMY, LLC,

                                             1:16cv0251

           Plaintiff,                       ELECTRONICALLY FILED

               v.

FORT LeBOEUF SCHOOL DISTRICT,

           Defendant.

## MEMORANDUM OPINION

This case was initiated by Pennsylvania International Academy, LLC ("the Academy"), a company which operates a residential boarding facility for high school students who attend Mercyhurst Preparatory School ("Mercyhurst Prep"), located in Erie, Pennsylvania.   The Academy's residential facilities fall within the boundaries of the Fort LeBoeuf School District ("School District").

The Academy originally filed this lawsuit in the Court of Common Pleas of Erie County, Pennsylvania, but the matter was removed to the United States Court for the Western District of Pennsylvania.  Because Count Three of the Academy's Complaint sets forth a federal civil rights claim, under 42 U.S.C. § 1983, for deprivation of property without due process of law, the removal was proper, as this District Court has original jurisdiction over this matter.  *See* 28 U.S.C. § 1331.

In addition to its Section 1983 claim, the Academy seeks a mandamus in the form of a permanent injunction requiring the School District to provide free transportation to its students to and from Mercyhurst Prep.  The Academy's request for mandamus alleges that the School

District, after six years of providing free bus transportation between the Academy's residential facility and Mercyhurst Prep, refused to provide free transportation for the 2016-2017 school year.

Finally, the Academy's Complaint also sets forth a subrogation claim to recover the costs it incurred for its students' transportation for the 2016-2017 school year, when the School District refused to provide free transportation to the Academy's students. To this end, the Academy seeks reimbursement in the amount of $26,207.00 to recoup its transportation payment and costs for the 2016-2017 school year.

Presently before the Court are the Parties' cross-motions for summary judgment.[1] The parties have fully briefed their cross-motions and there are no relevant, material facts in dispute. Thus, this matter is ripe for disposition.

## I.      Standard of Review

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute

---

[1] The Court acknowledges counsels' professionalism in joining the important issues herein, in an efficient and cost-effective manner, through the cross-motions for summary judgment procedure. The briefing was excellent.

"to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – *i.e.*, depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s).  Fed. R. Civ. P. 56(c)(1).  The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof for the claim in question.  *Conoshenti v. Public Service Elec. & Gas Co*, 364 F.3d 135, 140 (3d Cir. 2004), quoting *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001), quoting *Celotex*, 477 U.S. 317, 325 (1986).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s).  Fed. R. Civ. P. 56(c)(1).  When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party.  *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

In reviewing a motion for summary judgment, the Court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility

determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007), citing *Anderson*, 477 U.S. at 255.

In the instant case, the parties have filed cross-motions for summary judgment. It is well established that the filing of contradictory motions for summary judgment, "does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008), *quoting Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

## II.     Relevant Material Uncontested Facts

The Academy operates a residential building facility for high school-aged students who attend a private school, known as Mercyhurst Prep. The students, who reside at the Academy's facility and attend Mercyhurst Prep, possess F-1 Visas. The possession of an F-1 Visa renders these students lawful residents of the United States of America and the Commonwealth of Pennsylvania.

The Academy's residential facility is located within the School District. Mercyhurst Prep is located within ten miles of the School District's boundaries by way of the nearest public highway.

For six years prior to the 2016-2017 school year, the School District provided free bus transportation to the students who resided at the Academy's residential facility and who attended Mercyhurst Prep. Then, in June of 2016, the School District notified the Academy that it would no longer provide free bus transportation to the students residing at the Academy because of their

F-1 Visa status.  However, the School District offered to transport the Academy's students to and from the Academy's facility to and from Mercyhurst Prep at a cost of $765.00 per student for the 2016-2017 school year.  Rather than pay approximately $87,975.00 to the School District, the Academy contracted with the same transportation service provider to provide transportation for its students for the 2016-2017 school year at a cost of $26,207.00.

The Academy brought the instant lawsuit against the School District seeking: (1) a mandamus in the form of a permanent injunction requiring the School District to provide free transportation to its students; (2) subrogation of the $26,207.00 amount the Academy incurred during the 2016-2017 school year in costs to transport its students from their residence to Mercyhurst Prep; and/or (3) damages in the amount of $26,207.00, for the School District's alleged violation of the Academy's students' property right to be provided with free bus transportation from their place of residence (the Academy) to their private school (Mercyhurst Prep) as per Pennsylvania law.

### III.    DISCUSSION

#### a.  The School District's Motion for Summary Judgment

##### i.  Pennsylvania's Busing Statute

The School District has argued that all three of the Academy's claims set forth in its Complaint are "founded upon the flawed legal premise that the [School] District is legally obligated to provide the Academy's students with [free] transportation to and from their private secondary school."  Doc. no. 6, p. 4.

Pennsylvania's Public School Code, 24 Pa. C. S. A. §1-101 *et seq.*, contains a provision for the transportation of public school students (herein, "the busing statute"), which reads in pertinent part:

> (1) The board of school directors in any school district may, out of the funds of the district, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance not exceeding ten miles by the nearest public highway . . . . When provision is made by a board of school directors for the transportation of public school pupils to and from such schools or to and from any points within or without the Commonwealth in order to provide field trips as herein provided, the board of school directors shall also make identical provision for the free transportation of pupils who regularly attend nonpublic kindergarten, elementary and high schools not operated for profit to and from such schools or to and from any points within or without the Commonwealth in order to provide field trips as herein provided. Such transportation of pupils attending nonpublic schools shall be provided during regular school hours on such dates and periods that the nonpublic school not operated for profit is in regular session, according to the school calendar officially adopted by the directors of the same in accordance with provisions of law. . . .

24 Pa. C. S. A. § 13-1361.

The Court applies the rules of statutory construction when interpreting the above-quoted state statute. "It is well settled that the first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *United States v. Cooper*, 396 F.3d 308, 310 (3d Cir. 2005) (internal quotations and citations omitted). "Where the language of the statute is clear . . . the text of the statute is the end of the matter." *Steele v. Blackman*, 236 F.3d 130, 133 (3d Cir. 2001). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."

*Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001), *quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

The Court finds Pennsylvania's busing statute, quoted above, to be unambiguous. The statute specifically indicates that "[w]hen provision is made by a board of school directors for the transportation of public school pupils to and from such schools . . . the board of school directors shall also make identical provision for the free transportation of pupils who regularly attend nonpublic . . . schools not operated for profit to and from such schools[.]" Simply put, Pennsylvania's busing statute requires a school district to provide free bus transportation to students residing within the school district who attend nonpublic, nonprofit schools, if it provides free bus transportation to its students who attend public schools.

Based upon the uncontested facts presented herein, the School District provides free bus transportation to its public school students. The state's busing statute requires the same free bus transportation to its nonpublic school students. The parties to this lawsuit concur that the Academy's students reside within the school district and attend Mercyhurst Prep, a nonpublic, nonprofit school which is located outside the district boundaries, but at a distance not exceeding ten miles by the nearest public highway.

Given these uncontested facts, the Court finds that Pennsylvania's busing statute requires the School District to provide free bus transportation to the students who reside at the Academy to and from Mercyhurst Prep.

### ii.  Conflict Preemption

#### 1.  Overview of Conflict Preemption

However, the School District argues that the above-quoted busing statute, which this Court has now determined would require the School District to provide free bus transportation

from the residential facility operated by the Academy to and from Mercyhurst Prep, conflicts

with federal law.  The School District argues that under the Supremacy Clause of the United

States Constitution, Pennsylvania's busing statute must yield to the federal law.

The School District advances its argument under the theory of implied preemption,

known as "conflict preemption."[2]  Conflict preemption exists where "compliance with both state

and federal law is impossible,"[3] or where the state law "stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress."[4]  *California v.*

*ARC America Corp.*, 490 U.S. 93, 100, 101 (1989).  In either situation, federal law must prevail.

*Oneok, Inc. v. Learjet, Inc.*, ___ U.S. ___, 135 S. Ct. 1591, 1595 (2015).

This Court is guided by the principle that there exists a presumption against the federal

preemption of state laws.  *Cipollone v. Liggett Group Inc.*, 505 U.S. 504, 518 (1992).  Indeed,

the Court's preemption analysis "starts with the basic assumption that Congress did not intend to

displace state law."  *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).  In order to determine

---

[2] The Court notes that the Supreme Court has recognized three types of preemption: express preemption, implied conflict preemption, and field preemption."  *See Bruesewitz v. Wyeth Inc.*, 561 F.3d 233, 238–239 (3d Cir.2009) (citing *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713, (1985)).  Both conflict preemption and field preemption are types of implied preemption. *See, e.g., Hillsborough*, 471 U.S. at 713.  However, this Court notes that regardless of the "type" of preemption argued by the Parties herein, "the purpose of Congress" is the "touchstone" of any preemption inquiry. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotation marks omitted).

The Parties in this case concur that the type of preemption at issue is a type of implied preemption – namely, conflict preemption. *See* School District Brief at doc. no. 6, p. 6; and Academy Brief at doc. no. 11, p. 4.  Moreover, based upon the arguments set forth by the School District in its Briefs, this Court finds evidence that the School District is arguing conflict preemption. Id.  The Court will discuss the parties' respective positions on conflict preemption in greater detail, *infra*.

[3] Conflict preemption applies in the rare case "where it is impossible  . . . to comply with both the state and federal law." *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 495 (3d Cir. 2013), as amended (May 30, 2013) *citing Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

[4] Conflict preemption also applies when, "under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *MD Mall,* 715 F.3d at 495.  Simply put, "compliance with both laws is possible, yet state law poses an obstacle to the full achievement of federal purposes."  *Id.*

whether Congress did intend to preempt state law, the Court looks to "the scope of a [federal] statute's pre-emptive effect [and] is guided by the rule that the purpose of Congress is the ultimate touchstone in every pre-emption case." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008).

A state law can be preempted where "Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law," *Northwest Central Pipeline Corp. v. State Corporation Comm'n of Kan.*, 489 U.S. 493, 509 (1989), as well as "where, under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 373 (2000) (brackets and internal quotation marks omitted). In situations where federal and state regulations collaboratively occupy and regulate a field – for example, the regulation of energy production and/or sales – courts must be careful not to confuse the "congressionally designed interplay between state and federal regulation," resulting in an impermissible tension that requires pre-emption under the Supremacy Clause. *Northwest*, 489 U.S. at 518.

## 2. The Federal Laws at Issue

Applying this case law to the facts of this case, the School District, by claiming conflict preemption, essentially argues that Pennsylvania's busing statute impossibly conflicts with certain "federal laws" governing the issuance of F-1 visas (cited immediately below), and/or that Pennsylvania's busing statute stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress as set forth in these federal laws.

The "federal laws," to which the School District is referring and upon which it relies to support its argument, flow from Title 8 of the United States Code concerning Aliens and

Nationality, and more specifically from the Chapter of the Code regulating Immigration and Nationality. The specific "federal laws" found within Title 8 upon which the School District relies, describe a specific classification of nonimmigrant.[5]

The United States Supreme Court has broadly examined those very sections of Title 8 presently at issue in the instant case, and in so doing, held as follows:

> As amended in 1976, the [Immigration and Nationality] Act establishes two immigration quotas, one for the Eastern and one for the Western Hemisphere. The object of the quotas is to limit the number of aliens who can be admitted to the United States for permanent residence. To this end, the Act divides aliens into two classes. The first class, immigrant aliens, includes every alien who does not fall into an exclusion established by § 101(a)(15) of the Act, 66 Stat. 167, as amended, 8 U.S.C. § 1101(a)(15) (1976 ed.).
>
> \*      \*      \*
>
> The second class of aliens, nonimmigrant aliens, is established by § 101(a)(15) of the Act. This section creates 12 subcategories of aliens who may come to the United States without need for a quota allocation. See §§ 101(a)(15)(A) - (L). Congress defined nonimmigrant classes to provide for the needs of international diplomacy, tourism, and commerce, each of which requires that aliens be admitted to the United States from time to time and all of which would be hampered if every alien entering the United States were subject to a quota and to the more strict entry conditions placed on immigrant aliens.

*Elkins v. Moreno*, 435 U.S. 647, 664-65 (1978) (footnotes omitted), certified question answered *sub nom. Toll v. Moreno*, 284 Md. 425, 397 A.2d 1009 (1979).[6]

---

[5] Nonimmigrants, unlike immigrants, enter the U.S. for a temporary period and are restricted to activities consistent with their visa. Unlike immigrants, they are less subject to numerical restrictions and more likely to obtain waivers of inadmissibility. IRA KURZBAN, IMMIGRATION LAW SOURCEBOOK, 907 (15th ed. 2016).

[6] As noted in the passage, since the Supreme Court's decision in *Elkins*, "§ 101(a)(15)" referenced in the above passage, has been recodified at § 1101(a)(15) of Title 8 of the United States Code. In addition, the 12 subcategories of aliens referenced in the passage who could come to the United States without need for a quota allocation referenced in the *Elkins* decision (meaning those who could be classified as "nonimmigrant aliens"), has been expanded to 22 subcategories. *See* 8 U.S.C.A. § 1101(a)(15)(A)-(V).

Thus, the Supreme Court has explained that with respect to this portion of the United States Code, Congress' intent and purpose was to define nonimmigrant classes so as to "provide for the needs of international diplomacy, tourism, and commerce," enabling aliens be admitted to the United States from time to time, "which would be hampered if every alien entering the United States were subject to a quota and to the more strict entry conditions placed on immigrant aliens." *Id.* It is against this backdrop that this Court examines the two federal statutes and one regulation which comprise the specific "federal laws" upon which the School District bases is preemption argument.

The first statute relied upon by the School District in support of its conflict preemption argument reads, in pertinent part, as follows:

> **(15)** The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens—
>
> \* \* \*
>
> > **(F)** (i) an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study consistent with section 1184(l) of this title at an . . . academic high school . . . in the United States, particularly designated by him and approved by the Attorney General after consultation with the Secretary of Education, which institution or place of study shall have agreed to report to the Attorney General the termination of attendance of each nonimmigrant student, and if any such institution of learning or place of study fails to make reports promptly the approval shall be withdrawn . . . .

8 U.S.C.A. § 1101(a)(15)(F)(i).

The second federal statute upon which the School District also relies for its conflict preemption argument, reads in relevant, part as follows:

> (m) Nonimmigrant elementary and secondary school students

(1) An alien may not be accorded status as a nonimmigrant under clause (i) or (iii) of section 1101(a)(15)(F) of this title in order to pursue a course of study –

\* \* \*

(B) at a public secondary school unless –

(i) the aggregate period of such status at such a school does not exceed 12 months with respect to any alien, and

(ii) the alien demonstrates that the alien has reimbursed the local educational agency that administers the school for the full, unsubsidized per capita cost of providing education at such school for the period of the alien's attendance.

8 U.S.C.A. § 1184(m)(1)(B).

And finally, the School District also relies upon a federal regulation (and a government form referenced by that regulation) as further support for its conflict preemption argument. That regulation reads, in pertinent part:

(f) Students in . . . academic high schools, elementary schools, other academic institutions, and in language training programs –

(1) Admission of student –

(i) Eligibility for admission. A nonimmigrant student may be admitted into the United States in nonimmigrant status under section 101(a)(15)(F) of the Act, if:

(A) The student presents a SEVIS Form I–20 issued in his or her own name by a school approved by the Service for attendance by F–1 foreign students. (In the alternative, for a student seeking admission prior to August 1, 2003, the student may present a currently-valid Form I–20A–B/I–20ID, if that form was issued by the school prior to January 30, 2003);

(B) The student has documentary evidence of financial support in the amount indicated on the SEVIS Form I–20 (or the Form I–20A–B/I–20ID);

> (C) For students seeking initial admission only, the student intends to attend the school specified in the student's visa (or, where the student is exempt from the requirement for a visa, the school indicated on the SEVIS Form I–20 (or the Form I–20A–B/I–20ID)); and
>
> (D) In the case of a student who intends to study at a public secondary school, the student has demonstrated that he or she has reimbursed the local educational agency that administers the school for the full, unsubsidized per capita cost of providing education at the school for the period of the student's attendance.

8 C.F.R. § 214.2(f)(1).[7]

### 3. The Parties' Positions

The School District argues that the federal laws require the Academy's students – who, as conceded by the Academy, are all F-1 visa holders – to pay for their own transportation to and from the Academy and Mercyhurst Prep. See doc. no. 6., p. 8. The School District claims that the bus trip to and from the Academy and Mercyhurst Prep is an "expense" which falls under the cost of studying in the United States which a nonimmigrant student with an F-1 visa must bear. Id.

In furtherance of its argument, the School District claims that Congress' intent, by prohibiting students from pursuing a course of study at a public school, unless the students can pay for every expense associated with that course of study (see 8 U.S.C.A § 1184(m)(1)(A)), was to absolve local education agencies (like the School District) from bearing the financial burden of F-1 visa holders' course of study in the United States. Id. The School District concludes that

---

[7] These two statutes (8 U.S.C.A. § 1101(a)(15)(F)(i) and 8 U.S.C.A. § 1184(m)(1)(B)), along with the regulation (8 C.F.R. § 214.2(f)(1)), will be collectively referred to herein as "the federal laws" relied upon by the School District.

if public school attendees with F-1 visas must pay for bus expenses so must private school attendees.

The Academy counters by arguing the following: (1) the federal laws require F-1 visa holders who attend public schools in the United States to prepay for their education costs in advance (including expenses), but those same laws do not require F-1 visa holders who attend nonpublic schools, like Mercyhurst Prep, to do so; and (2) the Federal laws only prescribe the conditions upon which a foreign person will be granted an F-1 visa and do not impact the substantive rights of the nonimmigrant alien once he is admitted to the United States on an F-1 visa. The Academy concludes its argument by suggesting conflict preemption does not apply in this case because Pennsylvania's busing statute does not conflict with the purposes or objectives of the federal laws relied upon by the School District.

In response to the Academy's counterargument, the School District claimed that the Academy position "invites this Court to endorse a scheme that subverts various protections that permeate the F-1 process." See doc. no. 14, p. 3. Specifically, the School District contends that if this Court were to support the Academy's position, it would enable F-1 visa holders to shirk their obligations and abandon their representations made on their visa applications to "the considerable detriment of local taxpayers." Id., p. 3-4.

### 4. "Impossibility" Analysis

This Court begins its analysis by applying the principles of conflict preemption. This Court must determine if an "actual conflict" exists between Pennsylvania's busing statute and the federal laws cited above. *Hillsborough*, 471 U.S. at 713 (Congress' intent to preempt is inferred where there is an actual conflict between state and federal law). An "actual conflict" arises where compliance with both state and federal laws is an impossibility or where state law stands

as an obstacle to the accomplishments and execution of the full purposes and objectives of Congress.  *Id.*

Under the facts presented in this case, the Court finds that it is <u>not</u> impossible for Pennsylvania's busing statute to co-exist with the federal laws cited above.  Under the facts presented here, Pennsylvania's law dictates that the School District must provide free bus transportation for nonpublic school students if it provides free transportation to its public school students.  24 Pa. C. S. A. § 13-1361.  It is uncontested that the School District provides its public school students with free transportation to and from its public schools.  Therefore, Pennsylvania's busing statute requires the School District to make "identical provision for the free transportation of pupils who regularly attend nonpublic" schools.  *Id.*  All of the Academy's students attend a private school, Mercyhurst Prep, and therefore, the School District must provide them with free transportation.

Each of the two federal statutes relied upon by the School District and quoted above, establish the criteria necessary for a foreign student to be classified as a "nonimmigrant alien." The federal regulation relied upon by the School District establishes the procedure by which a person must apply for the "nonimmigrant alien" student classification.

First, Section 1101 defines what criteria a non-United States citizen must meet to be classified as a "nonimmigrant alien."  See 8 U.S.C.A. § 1101(a)(15)(F)(i).  For purposes of this analysis, Section 1101(a)(15)(F) indicates that in order to be classified as a "nonimmigrant alien," the individual must be: (1) an alien who resides in a foreign country which he has no intention of abandoning, (2) who is a bona fide student qualified to pursue a full course of study, and (3) who enters the United States temporarily and solely for the purpose of pursuing such a course of study at an academic high school.   Pennsylvania's busing statute does not make it

impossible for a person to meet these criteria and thus, be properly classified as a nonimmigrant alien.

Similarly, Pennsylvania's busing statute does not make it impossible to comply with 8 U.S.C.A. § 1184(m)(1)(B) which indicates that in order for a person to be classified as a nonimmigrant alien while pursing a course of study at a public secondary school:  (1) the aggregate period of such status at such a school must not exceed 12 months, and (2) the alien must demonstrate that she or he has reimbursed the local educational agency that administers the school for the full, unsubsidized per capita cost of providing education at such school for the period of the alien's attendance.  This federal statute adds additional criteria to those aliens desirous of the nonimmigrant alien classification and a public school education.  One of the two additional criterion is that the alien must prepay the local school district for that public education. Pennsylvania's busing statute does not make it impossible for a person to meet these additional federal criteria to be classified as a nonimmigrant alien.  (Moreover, this particular statute does not directly impact the Academy's students all of whom attend the private secondary school, Mercyhurst Prep.)

Third, 8 C.F.R. § 214.2(f)(1), establishes the procedure by which a foreign student may be admitted to the United States under the classification of "nonimmigrant alien" and pursue his or her course of study.  This federal regulation requires that a nonimmigrant alien student present a form (the SEVIS Form I-20), issued in his or her name, by an approved school, and possesses documentary evidence of financial support in the amount indicated on the form.  8 C.F.R. § 214.2(f)(1)(i)(A)-(B).  If the student plans to attend a public secondary school, this federal regulation further requires that the nonimmigrant student demonstrates that he or she has "reimbursed the local education agency that administers the school for the full, unsubsidized per

capita cost of providing education at the school for the period of the student's attendance."

8 C.F.R. § 214.2(f)(1)(i)(D). Again, this Court finds that Pennsylvania's busing statute does not

make it impossible to for a person to meet these procedural requirements on the road to

becoming classified as a nonimmigrant alien student.

Finally, the School District argues that because the federal laws require a foreign student

who wants to attend public school demonstrate that he or she has reimbursed the School District

for the "full, unsubsidized cost of providing [that] education[,]" in order to attain a

"nonimmigrant alien" classification, so must a private school attendee. The School District's

position essentially asserts that the Congressional intent of these federal laws is that the visa

holders, not any local public agency, will bear the cost of the visa holders' education.

This Court disagrees for several reasons. First, although Congress made reimbursement

an express condition for those foreigners who want to attain nonimmigrant alien status and attend

a public school, the reimbursement requirement is conspicuously absent from the statute

concerning foreigners who want to attain nonimmigrant alien status and attend a nonpublic

school. Congress could have made this sort of reimbursement equally applicable to both public

and nonpublic school attendees, but did not.

Second, the School District claims Congress intended to protect the public from bearing

the costs of any portion of the education provided to nonimmigrant aliens, but the School District

cites no authority for this proposition.

Finally, the Court finds that Congress' intent with respect to these federal statutes was not

to "protect the public from bearing the costs of any portion of the education," as suggested by the

School District. To the contrary, Congress' goal with respect to the enactment and amendment

of the federal laws at issue in this case was to define nonimmigrant classes in order "to provide

for the needs of international diplomacy, tourism, and commerce, each of which requires that aliens be admitted to the United States from time to time and all of which would be hampered if every alien entering the United States were subject to a quota and to the more strict entry conditions placed on immigrant aliens." *See*, *Elkins*, *supra.* *See also* H. Rep. No. 97-264, at 18-20 (1981) (Conf. Rep.) (amendment [to Section 1101] separates students into two separate nonimmigrant categories to assist with the enforcement of provisions surrounding their duration of stay). Simply stated, the purpose behind these federal laws was to define particular classes of nonimmigrant aliens and establish all of the criteria necessary for a foreign student to meet that particular classification.

Accordingly, this Court finds that the overarching purpose of the reimbursement statute (8 U.S.C.A. § 1184(m)(1)(B)) was to add two additional criteria that foreign students must meet in order to be classified as "nonimmigrant aliens" while attending a public secondary school. Therefore, this Court does not agree with the School District's position that the mere existence of 8 U.S.C.A. § 1184(m)(1)(A), which solely pertains to public school attendees, requires private school attendees who possess F-1 visas to pay for their own bus transportation. The Court finds that the Congress' purpose behind the enactment of any of the federal laws relied upon by the School District is not rendered impossible by Pennsylvania's busing law.

Finally, nothing in any of the federal laws relied upon by the School District requires that a nonimmigrant alien attending a private high school be able to reimburse (and/or pay in advance) for transportation to or from the private school that he or she will attend. Thus, compliance with both the state law and federal laws is not impossible under the facts presented.

### 5. "Obstacle" Analysis

Similarly, Pennsylvania's busing statute does not create an obstacle to the federal laws which classify the Academy students as "nonimmigrant aliens," and provide a procedure by which they may be admitted to the United States to pursue their courses of study. The state law concerning free busing for public and private students does not pose an obstacle to the full achievement of federal purposes. As the Supreme Court has noted, Congress' intent and purpose was to define nonimmigrant classes so as to "provide for the needs of international diplomacy, tourism, and commerce," enabling aliens be admitted to the United States from time to time, "which would be hampered if every alien entering the United States were subject to a quota and to the more strict entry conditions placed on immigrant aliens." *Elkins*, 435 U.S. at 664-65.

Again, the School District, without citing to any legal authority, contends that because an F-1 visa holder attending the School District's public schools must repay the School District for the unsubsidized, per capita cost of his or her education at a public school, so must an F-1 visa holder who attends a nonpublic school. However, the School District's position ignores the fact that Congress definitely imposed two additional requirements for individuals who want to attain a nonimmigrant alien classification <u>and</u> attend a public high school via its statute (8 U.S.C.A. § 1184(m)(1)(B) and through its regulation (8 C.F.R. § 214.2(f)(1)) without extending those criteria to individuals who want to attain a nonimmigrant alien classification and attend a nonpublic high school .

Therefore, for the same reasons set forth in subpart "4," immediately above, this Court disagrees with the School District's position in this matter.

### 6. Conflict Preemption Conclusion

Based on the foregoing law and authority, this Court concludes that conflict preemption is inapplicable under the facts and laws presented herein. The School District's Motion for Summary Judgment (doc. no. 5) predicated upon its preemption arguments will be denied.

### b. The Academy's Cross-Motion for Summary Judgment

The Academy's Complaint seeks a mandamus, in the form of a mandatory permanent injunction (Count One), reimbursement of the $26,207.00 which the Academy paid to the school bus company to transport its students during the 2016-2017 school year (Count Two), and damages for violating the civil rights of its students (Count Three).

The Academy suggests in its Briefs (doc. nos. 11, 15-1, and 24) that if the School District does not prevail on its preemption argument then the Academy is entitled to summary judgment on each of its three claims. The School District's Briefs (doc. nos. 6, 14, and 27) rely on the preemption argument in support of its claim that Academy should not prevail on any of its claims.

Because this Court has fully resolved the preemption matter in favor of the Academy, the Court will not and need not address the Plaintiff's claim for a mandamus in the form of a mandatory permanent injunction. Likewise, the Court will not address the Civil Rights claim raised by the Academy.

However, given the uncontested, relevant facts agreed upon by both parties, the Academy incurred $26,207.00 in expenses during the 2016-2017 school year with respect to busing the Academy's students to and from Mercyhurst Prep. Because this Court has determined (1) that Pennsylvania's busing law is applicable under the uncontested facts presented in this case, and

(2) this state law is not preempted by the federal laws governing nonimmigrant aliens, the Academy is entitled to be reimbursed by the School District for the $26,207.00.

### IV.     Conclusion

Based on all of the forgoing law and authority, the Defendant's Motion for Summary Judgment (doc. no. 5) will be denied and the Plaintiff's Cross-Motion for Summary Judgment (doc. no. 23) will be granted in part, specifically with respect to Count Two of the Complaint wherein the Plaintiff seeks reimbursement of its $26,207.00 for bus transportation.  An appropriate Order will follow.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge